IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES E. KEMPFER, SR.,

    Petitioner,

v.

    Civil Case No. 11-cv-480-DRH
    Criminal Case No. 09-cr-30146-DRH-3

UNITED STATES OF AMERICA,

    Respondent.

## MEMORANDUM & ORDER

HERNDON, Chief Judge:

### I.    Introduction

Now before this Court is petitioner James E. Kempfer, Sr.'s, motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The government opposes Kempfer's motion (Doc. 7). For the following reasons, Kempfer's motion for relief pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.[1]

### II.    Procedural History

On November 3, 2009, a federal superseding indictment charged Kempfer with one count of conspiracy to manufacture more than 500 grams of

---

[1] Having closely examined the record before it, the Court concludes Kempfer's claims do not warrant an evidentiary hearing. *See Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) ("for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner [has] actual proof of the allegations going beyond mere unsupported assertions"); *Menzer v. United States*, 200 F.3d 1000, 1005 (7th Cir. 2000) (holding a hearing not required where record conclusively demonstrates that a defendant is entitled to no relief on § 2255 motion); *see also* Rules 4(b) and 8(a) of Rules Governing Section 2255 Proceedings.

methamphetamine (Cr. Doc. 54). Kempfer entered into an open plea of guilty to the superseding indictment on February 12, 2010 (Cr. Docs. 111, 112, 113, 123). The presentence investigation report (PSR) was entered on April 9, 2010 (Cr. Doc. 129) (filed under seal) and revised on May 4, 2010 (Cr. Doc. 132) (filed under seal). Kempfer did not file objections to the PSR. On June 4, 2010, the Court sentenced Kempfer to 120 months' imprisonment; the mandatory minimum term. Kempfer did not appeal his conviction. Instantly, Kempfer raises three meritless claims of ineffective assistance of counsel.

### III.    Kempfer's Section 2255 Petition is Denied

#### a. Law

A prisoner may move to vacate, set aside or correct his sentence if he claims "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

Section 2255 is an extraordinary remedy because it asks the district court "to reopen the criminal process to a person who has already had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, relief under Section 2255 is "reserved for extraordinary situations," *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)), as a collateral attack pursuant to

Section 2255 is not a substitute for a direct appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007).

Thus, unless a movant demonstrates changed circumstances in fact or law, he may not raise issues already decided on direct appeal, *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). Further, a petitioner cannot raise constitutional issues that he could have but did not directly appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal, or unless failure to consider the claim would result in a fundamental miscarriage of justice. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000). Moreover, a Section 2255 motion cannot pursue nonconstitutional issues that were not raised on direct appeal regardless of cause and prejudice. *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000). The only way such issues could be heard in the Section 2255 context is if the alleged error of law represents "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979).

Kempfer raises three claims of ineffective assistance of counsel. Importantly, the Supreme Court has held that the usual procedural default rule does not generally apply to such claims as, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the

petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

To succeed in an ineffective assistance of counsel claim, a petitioner must demonstrate (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To satisfy the first prong, "the Court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. To satisfy the second prong, a petitioner must demonstrate to a "reasonable probability" that without the unprofessional errors, "the result of the proceeding would have been different." *Id.* at 696. A district court's analysis begins with a "strong presumption that the defendant's attorney rendered adequate representation of his client." *United States v. Meyer*, 234 F.3d 319, 325 (7th Cir. 2000). Thus, a petitioner must overcome a heavy burden to prove that his attorney was constitutionally deficient. *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006).

### b. Application

**1. Defense Counsel Richard Whitney was not Ineffective for Allowing Kempfer to Proffer Prior to Indictment.**

Prior to indictment, Kempfer retained the services of attorney Richard Whitney (Whitney). Also prior to indictment, Kempfer participated in a proffer with the United States Attorney's Office where Whitney was present. Kempfer and

Whitney signed what appears to be a standard proffer agreement letter (Doc. 7-1). The government relates that Kempfer wanted to cooperate with the United States Attorney's Office in consideration of a possible sentence reduction. While Kempfer has provided the Court with scarce information regarding the specifics of said proffer, the government informs the Court that the law enforcement officers present at the proffer were case agents investigating Kempfer's case; an Illinois State Police Officer and a Randolph County, Illinois Deputy Sheriff. The proffer was not successful because the government felt Kempfer was not totally forthcoming with the information he possessed concerning illegal activities (Doc. 7-2, p. 1).

Kempfer alleges Whitney was ineffective for permitting Kempfer to participate in a proffer where no "representative" of the United States Attorney's Office was present. Kempfer states this was prejudicial to him because, "the state law enforcement officers present were not bound by any rules of the proffer," "the proffer was tantamount to a verbal confession," and "the reliability of the account of the conversation made by the state law enforcement officers could not be verified by the United States Attorney" (Doc. 1, p. 2).

Kempfer's claims are utterly without merit. Kempfer cites no authority for his proposition that certain individuals were required to be present at the proffer. The proffer agreement was with the United States Attorney's Office; not an individual. Thus, Kempfer's claim that the law enforcement officers were not bound by the proffer agreement is unfounded. As to Kempfer's complaint that the

proffer was tantamount to a confession, the terms of the proffer agreement clearly demonstrate the purpose of the proffer was to obtain information from Kempfer regarding the illegal activities of Kempfer and others.

Kempfer seems to argue Whitney was ineffective because the government did not accept Kempfer's proffer. The proffer agreement makes clear that simply giving a proffer does not mean that the cooperating defendant is entitled to a plea agreement or any other consideration for a lower sentence:

> Seventh, while an "off-the-record" proffer or discussion is many times a preliminary step to the government's accepting a plea agreement offer, ***you should know that before any offer is accepted, the government will assess whether your client was <u>completely</u> truthful during the "off-the-record" proffer or discussion. The determination of whether your client has been completely truthful is within the sole discretion of the government and if the government does not determine that your client has been <u>completely</u> truthful, we will not even consider the plea agreement offer you may make.*** You and your client should further understand that no promises are being made as to whether any offer will be accepted or what the terms of any agreement may be. Your client should also understand that even if the government determines that your client has been completely truthful, the government is not obligated to extend a plea agreement offer or consider any plea proposal you make. In addition, the possibility exists that the government will not accept your offer but will make a counter-offer that is unacceptable to your client. Even if that happens, your client will nevertheless be bound by the terms of this agreement.

(Doc. 7-1, p. 3) (additional emphasis added). The government determined Kempfer was not completely truthful. Thus, the government did not offer Kempfer a plea agreement. Clearly, the fact the government determined Kempfer was not completely truthful does not mean Whitney's "acts or omissions were outside the

wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Whitney was not ineffective for advising Kempfer to participate in a proffer.

### 2. Defense Counsel Ethan Skaggs was not Ineffective for Advising Kempfer to Plead Guilty

Kempfer next claims his appointed counsel, Ethan Skaggs (Skaggs), was ineffective because he provided Kempfer with faulty information concerning Kempfer's decision to plead guilty. Kempfer mistakenly believes his only possible advisory guideline sentence range was 120-121 months. Thus, Kempfer argues Skaggs was ineffective for allegedly "encouraging" Kempfer to plead guilty, as he believes he could have gotten a lower sentence if he had proceeded to trial.

The PSR determined Kempfer had a total offense level of 29, with a criminal history category of II, amounting to an advisory guideline sentencing range of 97-121 months (Cr. Doc. 132, p. 17; Cr. Doc. 178, p. 6). However, because Kempfer's relevant conduct was 1,205 grams of a mixture and substance containing methamphetamine, Kempfer faced a mandatory minimum sentence of 120 months. Had Kempfer gone to trial and been convicted, he would have faced a statutory maximum of life and would not have received a three level reduction for acceptance of responsibility (Cr. Doc. 178, p. 5). Thus, assuming Kempfer was convicted at trial, had no other enhancements, and had the same relevant conduct, he would have had a total offense level of 32, criminal history category of II, and faced an advisory guideline sentence range of 135-168 months. Accordingly, by pleading guilty, Kempfer obviously received an advisory guideline sentence range that was shorter than if he had gone to trial.

Moreover, at Kempfer's change of plea hearing, Magistrate Judge Wilkerson, Assistant U.S. Attorney Donald Boyce (Boyce), and Kempfer engaged in the following exchange:

> THE COURT: Okay. All right. Mr. Boyce, if you would, would you give the elements and maximum penalties, and, in this case, the minimum and maximum penalties that Mr. Kempfer faces if he pleads guilty in this matter.
>
> MR. BOYCE: Yes, your honor [discussion of elements of offense]. As to the potential penalties, they are a term of imprisonment of not less than ten years and up to life, a fine of not more than $4 million, or both, a term of supervised release of at least five years, and a 100-dollar special assessment.
>
> . . .
>
> THE COURT: Okay. Did you hear the attorney for the government tell you what the minimum and maximum penalty is that the judge might impose upon you if he accepts your plea of guilty?
>
> MR. KEMPFER: Yes.

(Cr. Doc. 177, pp. 14-15).

Additionally, Skaggs has submitted an affidavit attesting to the following:

> I informed Mr. Kempfer that he would not receive any consideration from the Government for his cooperation and that as such the best sentence he could get under the circumstances was the mandatory minimum of ten years. I informed Mr. Kempfer he had the right to proceed to trial, but if he did so his defense would be constrained by his original proffer statement. Mr. Kempfer informed me he did not desire to proceed to trial. While discussing the sentencing issues in the matter, I remember Mr. Kempfer asking me, "at sentencing, we're going to ask for less than 10?" I replied, "No, we can't." Mr. Kempfer followed up with the question, "The Judge can give me less than 10?" I replied that the Judge could not give a sentence of under ten years. I also remember having this same conversation with Mr. Kempfer during a telephone conference in which we were discussing sentencing issues. **My replies to Mr. Kempfer's questions were the same - we could not ask for a sentence under the mandatory**

**minimum and the Judge could not give a sentence under the mandatory minimum of ten years.**

(Doc. 7-2, p. 2) (emphasis added). Kempfer voluntarily pleaded guilty with full knowledge that the mandatory minimum sentence was 120 months. On the basis of the above, the Court decisively finds Skaggs was not ineffective for, in Kempfer's words, "encouraging" him to plead guilty. As Skaggs correctly apprised Kempfer of the realities surrounding his potential sentences, Skaggs clearly acted well within "an objective standard of reasonableness." *Strickland*, 466 U.S. at 694.

### 3. Kempfer was not Safety Valve Eligible.

Finally, Kempfer argues Skaggs was ineffective for failing to raise Kempfer's safety-valve eligibility under the guidelines. Simply put, Kempfer was not safety-valve eligible. To qualify for the safety-valve, Kempfer could not have had more than one criminal history point. *See* U.S.S.G. § 5C1.2(a)(1).

The PSR determined Kempfer had two criminal history points (Cr. Doc. 132, p. 12). Kempfer did not file objections to the PSR. Further, at sentencing, when the undersigned asked Kempfer if there were any errors in the PSR, Kempfer answered that there were not (Cr. Doc. 178, p. 2). Finally, Skaggs states:

> Upon disclosure of the Presentence Report in the criminal case, I reviewed [the] same. I discussed the Presentence Report with Mr. Kempfer. Mr. Kempfer did not deny that his criminal history included the charges for which he received criminal history points. I contacted Probation Officer Wendy Dunne regarding the cases for which Mr. Kempfer was receiving criminal history points. Based upon my understanding of the sentencing guidelines and the conversation I had with Ms. Dunne, I believe the criminal history points assessed in the Presentence Report were done so correctly. As

> Mr. Kempfer had 2 criminal history points, he was not safety valve eligible.

(Doc. 7-2, p. 3). Kempfer does not offer evidence in contradiction of Skaggs' statements. Skaggs did not object to Kempfer's criminal history as determined by the PSR because it was accurate, as Kempfer confirmed. Obviously, Skaggs was not ineffective for failing to raise a meritless argument. Accordingly, Skaggs' representation of Kempfer was more than objectively reasonable and most assuredly not constitutionally deficient. *Strickland*, 466 U.S. at 694. For the above reasons, Kempfer's Section 2255 petition is **DENIED** and his claims are **DISMISSED** (Doc. 1).

**4. The Court Denies Kempfer a Certificate of Appealability.**

Under Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Thus, the Court must determine whether Kempfer's claims warrant a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; he may appeal only those issues for which a certificate of appealability have been granted. *See Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A *habeas* petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). Under this standard, a petitioner must demonstrate that, "reasonable

jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

For the reasons stated above, Kempfer's claims are utterly without merit. Both Whitney and Skaggs provided Kempfer with more than objectively reasonable counsel. Thus, reasonable jurists would not debate that the petition does not present a substantial showing of the denial of a constitutional right, nor would they encourage the claims to proceed further. Therefore, the Court **DENIES** Kempfer a certificate of appealability.

### IV.   Conclusion

For the reasons set forth above, Kempfer's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence is **DENIED** (Doc. 1). Thus, Kempfer's claims are **DISMISSED WITH PREJUDICE**. The Clerk is instructed to enter judgment accordingly. Finally, the Court shall not issue a certificate of appealability.

**IT IS SO ORDERED.**
Signed this 11th day of April 2013.

Digitally signed by
David R. Herndon
Date: 2013.04.11
13:43:00 -05'00'

**Chief Judge**
**United States District Court**